**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00287-CV**
_____

**JEFF AKHTAR, Appellant**

**V.**

**EAST TEXAS TRUSS, LLC, Appellee**

**On Appeal from the County Court at Law No. 1**
**Jefferson County, Texas**
**Trial Cause No. 133146**

**MEMORANDUM OPINION**

Appellant Jeff Akhtar asks us to reverse a take-nothing judgment which was entered after a bench trial on Akhtar's breach of contract, fraud and negligence claims against Appellee East Texas Truss, LLC ("Truss"). Akhtar's claims against Truss arose from the purchase of roof trusses that were deteriorated and unusable by the time they were delivered to Akhtar. As explained below, we affirm the trial court's judgment.

1

Background

In November 2016, Akhtar placed an order with Truss for fifty-one roof trusses which he planned to use in the construction of a covered basketball court on his property. Because of a measurement discrepancy, the trusses were too small and could not be used. In May 2017, Akhtar ordered forty-eight larger trusses. Akhtar agreed this suit pertains only to this second set of trusses. Akhtar encountered a problem when a petrochemical company, Citgo, asserted the basketball court's planned location infringed on a pipeline easement. Akhtar claims he requested that Truss delay fabrication of the second set of trusses until such time as the problem with Citgo was resolved. Truss claims it had already completed fabrication of the trusses by the time Akhtar contacted them. Both parties claim they repeatedly tried to contact the other to arrange for delivery in the months that followed. When the trusses were finally delivered sixteen months later, they had deteriorated due to exposure to the elements. Truss declined to refund or replace the trusses, and Akhtar sued for breach of contract, fraud and negligence. The case was tried to the court, which found for Truss and entered a take-nothing judgment. Akhtar filed a Verified Motion for New Trial asserting newly discovered evidence, and after the trial court denied the motion, Akhtar filed an appeal. Akhtar raises three issues on appeal:

1. Whether the trial court erred in denying Appellant's claims for breach of contract and request for reimbursement of the funds paid for trusses

that were not delivered to Appellant and finding there was no breach of contract on the part of the Appellee;

2. Whether the trial court erred in the denial of the claim for fraud, misrepresentation and negligence as the trusses were ordered and paid for in May 2017 and no attempts were made to deliver the product was fraudulent on the part of the Appellee as he took the money to purchase the trusses with promises being made that a product would be provided in exchange for the payment; and

3. Whether the denial of the Motion for New Trial with the new evidence of the text message showing the request for delivery of the trusses should have been denied based upon the finding that Appellant did not request delivery of the trusses.

## Standard Of Review

"In a bench trial, the trial court, as factfinder, is the sole judge of the witnesses' credibility and weight of the evidence and is tasked with resolving conflicts in the evidence and drawing reasonable inferences from basic facts to ultimate facts." *Schoonewolff v. Choate*, No. 09-23-00148-CV, 2025 Tex. App. LEXIS 3681, at *28 (Tex. App.—Beaumont May 29, 2025, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005); *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004); *Morrell v. Morrell*, No. 09-20-00086-CV, 2022 Tex. App. LEXIS 2101, at *12 (Tex. App.—Beaumont Mar. 31, 2022, pet. denied (mem. op.)). The trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984).

Since neither party requested the trial court to make written Findings of Fact and Conclusions of Law, "it is implied that the trial court made all fact findings

3

necessary to support its judgment." *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). When the party with the burden of proof at trial attacks an adverse finding, that party must demonstrate that the evidence establishes conclusively, i.e., as a matter of law, all vital facts in support of the finding sought by the party. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). When the appellate record includes the reporter's and clerk's records, implied findings are not conclusive and may be challenged based on legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We review the trial court's decision for legal sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the evidence in the light most favorable to the challenged findings and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827.

## The Evidence

*Jeff Akhtar's Testimony and Exhibits*

Akhtar testified he lives in Beaumont and has been in the construction business for over thirty years. The trusses in question, however, were for his personal

4

use in the construction of an indoor basketball court on his property. Akhtar testified he began the first order of trusses by calling Jack, a Truss employee. The court admitted Exhibit A which included a copy of an undated, unsigned order for fifty-one "S01" trusses with a 50' span and a 5.00 pitch. Akhtar testified he ordered and paid for the trusses on November 17, 2016, and the court admitted Exhibit B which includes a credit card statement showing a $12,933.58 payment to Truss on that date. However, when the trusses were received in early January 2017, they were too short. Akhtar testified, "The first one I don't think it was Jack's fault or my fault, neither one of our fault." Since Akhtar could not use these trusses for their intended purpose, he gave them to his business so that they could use some of the wood.

Akhtar testified the lawsuit is about the second set of trusses he ordered in May 2017. According to Akhtar, when he and Jack were measuring for the second set of trusses, he advised Jack of the problem with Citgo's alleged pipeline easement and therefore told Jack to "[j]ust take the sizes." Exhibit A includes an unsigned, undated order for forty-eight "T01" trusses with a 57'11" span and a 4.00 pitch. Exhibit A also includes two internal pricing plans from Truss dated May 1, 2017, one at 8:10 a.m. for $14,247.19, and another at 11:29 a.m. for $13,891.43. Neither price includes a delivery charge. Akhtar testified he ordered the second set of trusses on May 1, 2017, and paid for them on May 10, 2017. Exhibit B includes a credit

card statement showing a payment to Truss on May 10, 2017, in the amount of $13,000.

Akhtar testified that when he paid for the second set of trusses, he was confident he could take care of the problem with Citgo, but he also testified that in late May or early June 2017, "I called Jack and I talked to Jack. I explained to him I have a problem with the Citgo. Hold on them. I may have to go back make them different kind or different sizes. So just hold on." Akhtar denied that Jack told him the trusses were already fabricated, and according to Akhtar, it was not possible that they could have been completed by that time. Sometime after Hurricane Harvey, Citgo gave him "the green light to go ahead and build the basketball court." Akhtar testified:

Q. Do you remember what month you started calling him asking for the trusses?

A. Yes, ma'am. In the month of October, I believe. I have it here somewhere.

Q. October of 2017 after Hurricane Harvey?

A. No, ma'am. '18.

Q. '18?

A. Yes, ma'am. October of '18.

At another point in his testimony, Akhtar said he began making these phone calls in either September or October.

6

Akhtar denied having previously received a certified letter from Truss's president, Ronald Poindexter, in June 2018.[1] He testified Truss's personnel never contacted him to let him know that the trusses were ready to be delivered, and he had to call them over 30 times before they were delivered on October 16, 2018. Akhtar testified after the trusses were delivered, he tried to use them, but they fell apart. When asked whether he knew the trusses were being stored outside, Akhtar answered:

> No. Why would you put trusses outside? Hold on, sir. Why would you put product outside and you know there's a hurricane and you know weather is bad. Why you don't have a warehouse? Why you don't store your stuff properly where it's supposed to be stored?
>
> I buy stuff from Home Depot and Lowes they deliver me six months later sometimes, seven months later. I still, as we talking right now, you can walk with me to Lowes. They owe me material that has been ordered for almost a year now. I have not picked up order yet because I don't need it right now or they didn't have it in the stock at that time when I needed it.
>
> So that don't mean when you deliver it, you going to put my stuff knowing it's indoor, indoor material, and you going to store it outside letting it get wet and letting it get hot and heat and wet, you going to deliver me that. That is wrong of [Truss]. That's what I'm saying…. They shouldn't be storing somebody's material outside.

---

[1]Although the letter was sent to Akhtar with a street number of 12410 and Akhtar's home address is 12460, Akhtar testified 12410 was his son's address, and the property at that address was used as a church at the time of trial. Despite this apparent discrepancy in Akhtar's mailing address, Akhtar acknowledged that he or his office would have received mail delivered to 12410.

Akhtar showed the trial court three videos recorded and stored on his phone, but the videos were not entered into evidence and are not included in the appellate record. While playing the videos for the court and the attorneys, Akhtar described them as showing how the trusses had disintegrated by the time Truss delivered them in October 2018 and did not bear the usual "yellow sticker on them that says they are certified to be put it on[.]"

Akhtar testified he eventually purchased metal trusses from a different company. When asked what remedy he sought, Akhtar responded that instead of a money judgment, he wanted Truss to fabricate new trusses for his church.

*Diana Gomez's Testimony*

Diana Gomez has been the regional manager for one of Akhtar's construction companies since 2013. Gomez described her responsibilities as paying bills, checking on properties, and helping with ongoing projects, and permits. Gomez confirmed that Akhtar paid for the second truss order on May 10, but stated that shortly thereafter, on the same date she paid the invoice, she called Truss to advise Truss not to fabricate the order at that time due to the problems they were having with Citgo. Gomez added that she received a response from Jack, who stated he had already spoken with Akhtar. Gomez denied that Truss ever attempted to contact Akhtar by phone or email to advise that the trusses were ready.

8

*Ronald Poindexter's Testimony*

Ronald Poindexter has been the sole member, owner, and president of Truss since its inception, over thirty years before trial. Poindexter described Truss as "a small shop[]" that manufactures building components, including roof trusses, "to specific orders for customers." According to Poindexter, Truss has a 10,000-square-foot facility where it has separate assembly areas for roof trusses and floor trusses. Although Truss stores its raw materials indoors, it stores its finished products outside because it does not have interior storage space, and it typically delivers trusses within two weeks after they are fabricated. Poindexter also testified that Truss uses "very little treated lumber. It's the rare exception rather than the norm." In Poindexter's opinion, it is safe to store untreated lumber outside for up to a year, but after that time, the wood will deteriorate.

To the best of Poindexter's recollection, Akhtar ordered only two sets of trusses from Truss. According to Poindexter, Truss's standard timetable for fabricating trusses is two to three weeks, but Akhtar's second order was done even more quickly because Truss assumed Akhtar was "ready" for the trusses since there was a problem with his first order. Poindexter testified Truss received Akhtar's second truss order in May 2017, began fabricating the trusses, and completed them "by the first of June, somewhere around there[.]" According to Poindexter, "I know the conversation of Jack and him, and they were ready when he first called Jack to

delay them." Poindexter stated that if Truss had not already finished Akhtar's order by the time he called to delay production, Truss "probably would have refunded [Akhtar's] money because we don't hold money on trusses we don't build."

Poindexter testified the trusses, when stacked together, were fifty-eight feet long, ten feet wide, and nine or ten feet high, and due to Akhtar's delay in requesting delivery, they had to be moved around Truss's yard three times in an effort to minimize inconvenience. During the approximately sixteen months between the time the trusses were completed in late May or early June 2017 and the time they were delivered to Akhtar in October 2018, they were exposed to weather, including Hurricane Harvey, which struck Southeast Texas in August 2017 but did not flood Truss property in Hillister. Poindexter testified the trusses deteriorated due to sun and rain exposure, but he did not consider this deterioration to be his responsibility, since it was Akhtar, not Truss, who delayed delivery.

Poindexter testified that Truss notifies its customers when orders are ready for delivery, and Truss personnel contacted Akhtar "at least once a month until they were delivered." In June 2018, Poindexter sent Akhtar a certified letter about the trusses, but the letter was returned to Truss as "unclaimed" and "unable to forward." Truss sent this letter to the address on file for Akhtar, which Poindexter believed to have been supplied by Akhtar. Poindexter also testified he has been fabricating

10

trusses for thirty years, and his company has never put any certificates on trusses, because the jurisdictions in which the company operates do not require them.

*The Trial Court's Decision*

The trial court announced its decision as follows:

In this case the plaintiff has the burden of proof. The Court is struck by several things in the case. The way the product was ordered, the way it was ordered. I mean, the Court would assume that the customer would normally specify what he is wanting. A party is, of course, not bound by that, but there is no testimony, there was no evidence submitted about industry custom or practice for ordering trusses. Is the truss maker responsible for measuring, or does the customer specify the pertinent dimensions for the trusses?

I would imagine the customer normally provides it. Of course, the parties can agree differently if they wish to do so. They don't have to follow the custom, and I'm sure every order could differ somewhat.

But anyway, there's no testimony on that and that's problematic. I think the factors that give rise to that situation affect where we are here today. And the Court would just note, for example, in the Plaintiff's petition they ask for a – they stated Plaintiff has been damaged for a specific sum of money.

During the final moments of the Plaintiff's testimony, he was asked by his counsel about what he was seeking here today and it was suddenly mentioned or suggested, it seemed to the Court, to be for a dollar amount. Yet surprisingly he testified that he wanted the defendant to build some more trusses for some other project.

So that begs the question would somebody who felt like they were damaged by a vendor/supplier want to continue doing business with such a supplier and all. And the Court finds that very unusual.

For these reasons and the facts that give rise to this whole entire situation and the lack of evidence presented and the fact that it's

11

problematic on the part of the plaintiff, the Court finds for the defendant.

*Akhtar's Motion for New Trial*

Akhtar sought a new trial on the basis of newly discovered evidence consisting of text message exchange dated September 18, 2018. In the texts, Akhtar states "Jack is been too lo g now sir." [sic] Jack then replies, "You need to call Ron in order to arrange delivery, I'm working in Abilene for a couple of months." The trial court denied the motion, and Akhtar appealed.

Analysis

*Breach of Contract*

In his first issue, Akhtar states that he "had a valid and enforceable purchase contract with" Truss. Akhtar then argues that the trusses "were not delivered as agreed" and that Truss breached the parties' contract "and failed to provide the product that [Akhtar] paid for in full."

A breach of contract clam requires proof of four elements: (1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See S&S Emergency Training Sols., Inc. v. Elliott,* 564 S.W.3d 843, 847 (Tex. 2018); *Ace Real Prop. Invs. LP v. Cedar Knob Invs., LLC,* No. 09-19-00375-CV, 2022 Tex. App. LEXIS 244, at *24 (Tex. App.—Beaumont Jan. 13, 2022, pet. denied) (mem. op.). A valid contract is shown through evidence that establishes the following elements: (1) an offer;

12

(2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds as to subject matter and essential terms; (4) communication of each party's consent to the terms of the agreement; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See Bank of N.Y. Mellon v. Hall*, No. 09-23-00102-CV, 2025 Tex. App. LEXIS 3526, at *102–03 (Tex. App.—Beaumont May 22, 2025, no pet.) (mem. op.) (citations omitted). "If the court is unable to determine the parties' rights and obligations there is no enforceable contract." *Allamon Tool Co. v. Derryberry*, No. 09-06-200-CV, 2007 Tex. App. LEXIS 8858, at *5 (Tex. App.—Beaumont Nov. 8, 2007, no pet.) (mem. op.). "'Fatal indefiniteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered or the property to be transferred.'" *Id*. at *6 (quoting *COC Servs., Ltd. v. CompUSA, Inc*., 150 S.W.3d 654, 664 (Tex. App.—Dallas 2004, pet. denied).

As the party with the burden of proof, Akhtar was required to establish each element of his breach-of-contract claim by a preponderance of the evidence. The trial court, as factfinder, was tasked with the responsibility of evaluating the credibility and weight of the evidence. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) ("[T]he [factfinder] is the sole judge of the credibility of witnesses and the weight to be given to their testimony."); *Schoonewolff,* 2025 Tex. App. LEXIS 3681, at *28; *Saulsberry v. Ross*, 485 S.W.3d 35, 41 (Tex. App.—

13

Houston [14th Dist.] 2015, pet. denied) (citing *City of Keller*, S.W.3d at 820) ("Because it is the factfinder's responsibility to weigh credibility and resolve conflicts in the evidence, we will defer to those determinations so long as they are reasonable."); *see also Edinger v. Stillwaters Pool Co.*, No. 02-24-00527-CV, 2025 Tex. App. LEXIS 6491, at *34 (Tex. App.—Fort Worth Aug. 21, 2025, no pet.) (mem. op.) ("[T]he [factfinder] was entitled to determine—based on the evidence presented by both parties—whether [appellee] had performed each month and whether [appellant] had breached the contract, or vice versa.").

The trial court may have concluded the evidence did not establish the parties were in agreement regarding price. Exhibit B shows Akhtar paid $13,000 on May 10, 2017, but there was no evidence Truss ever agreed to accept $13,000 as full and final payment for fabrication and delivery of the trusses. Exhibit A contained two internal pricing documents generated by Truss three hours apart on May 1, 2017, the first of which was for $14,247.19, and the second for $13,891.43. This document does not include a charge for delivery, and there was no evidence the parties ever reached an agreement concerning who was responsible to pay for delivery. The trial court may have found the parties never agreed on a price or that Akhtar failed to prove that he performed by paying the full price for fabrication and delivery of the trusses.

14

The trial court also may have determined that the parties failed to agree on a time of performance, thereby preventing the formation of an enforceable contract. *See Allamon Tool Co.*, 2007 Tex. App. LEXIS 8858, at *5. ("If the court is unable to determine the parties' rights and obligations, there is no enforceable contract."); *see also Searcy v. DDA, Inc.* 201 S.W.3d 319, 322, (Tex. App.—Dallas 2006, no pet.); *Estate of Eberling v. Fair*, 546 S.W.2d 329, 335 (Tex. App.—Dallas 1976, writ ref'd n.r.e.); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

Even if the trial court believed the parties formed an enforceable contract, the trial court may have concluded the parties did not agree on a date of fabrication nor a date of delivery, nor that the trusses were to be made from treated lumber, nor that they were to be stored indoors until the parties reached an agreement concerning delivery. A court may not "rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *Am. Midstream Ala. Intrastate, LLC v. Rainbow Energy Mktg. Corp.*, 714 S.W.3d 572, 574 (Tex. 2025) (quoting *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). The trial court correctly may have declined to insert provisions into the parties' agreement in this manner. Akhtar could not have established as a matter of law that Truss breached the agreement by failing to comply with nonexistent terms.

15

The trial court may also have believed that it was Akhtar, not Truss, that breached the contract, if any, by delaying delivery for over a year. *See* Tex. Bus & Com. Code Ann. 2.301 ("The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract."); *see also Saulsberry*, 485 S.W.3d at 41. Akhtar contends that the words "Delivery by Plan" at the top of the May 2017 order is evidence that Jack understood, at the time the order was placed, that the trusses were not to be built until such time as Akhtar resolved the problem with Citgo. However, the trial court may have assigned little or no weight to this evidence, because "Delivery by Plan" also appears at the top of the November 2016 order even though there was no testimony that Akhtar ever requested a delay in the fabrication of that set of trusses. More importantly, the question on appeal is not whether Akhtar presented evidence to support his breach-of-contract claim; rather, the question is whether Akhtar's evidence conclusively established the claim as a matter of law. Akhtar argues the evidence is conclusive, because his and Gomez's testimony that they told Truss to delay fabrication of the trusses was uncontradicted since the trial court sustained Akhtar's objection to Poindexter's contrary testimony as hearsay. Akhtar's brief sets out one question and answer from Poindexter's testimony to which he successfully objected as hearsay. To preserve error, however, Akhtar needed to timely and specifically object every time Poindexter offered similar testimony. *See Volkswagen of Am., Inc. v. Ramirez,*

16

159 S.W.3d 897, 907 (Tex. 2004) (citations omitted) ("The general rule is error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection."); Tex. R. App. P. 33.1(a)(1)(A). Poindexter testified without objection:

Q. When were these trusses completed?

A. They were completed somewhere -- our policy is two to three weeks from the date of payment and order for completion and ready for delivery. So that's pretty much our standard.
So if he ordered them in May, by June. It would have been somewhere middle of June. It would have been by the first of June. I mean middle of May, it would have been by the first of June, somewhere around there they were completed. I know the conversation of Jack and him, and they were ready when he first called Jack to delay them.

Q. So, you knew that Mr. Akhtar called and said to hold off on them?

A. But it was too late. They were already built.

Q. Do you know if he was ever told it was too late, they had already been built?

A. Yes.

Q. How do you know that?

A. Based on the conversation with my son.

Moreover, the trial court may have questioned the credibility of, or may have assigned little or no weight to, Akhtar's and Gomez's testimony that Jack was told on May 10, 2017, that fabrication was to be delayed, because the trial court may have found this testimony inconsistent with Akhtar's own testimony that it was in

17

late May or early June that he called Jack and told him, "I have a problem with the Citgo. Hold on them. Don't make them yet." The trial court may have concluded from the conflicting evidence that the trusses had already been fabricated by the time Akhtar requested that Truss delay fabrication.

Because the record contains conflicting evidence regarding whether any meeting of the minds existed concerning when the trusses were to be fabricated and delivered, whether Akhtar performed by paying in full for fabrication and delivery, and whether Truss breached any term of any such agreement by fabricating the trusses too soon or delivering them too late, we conclude the trial court did not err in finding that the evidence did not establish a breach of contract claim against Truss. We overrule Akhtar's first issue.

*Fraud*

Akhtar's second issue posits that the trial court erred "in the denial of the claim for fraud, misrepresentation and negligence[.]" Although Akhtar argues that Truss was liable for fraud, and although misrepresentation is an element of fraud, Akhtar does not identify any material representation that was made by Truss, that was false, that was known by Truss to be false at the time it was made, that was intended to be acted upon, that was acted upon in reliance by Akhtar, and that resulted in Akhtar's harm. *See In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (listing elements of fraud); *see also Ace Real Prop. Invs., LP v. Cedar Knob Invs., LLC,*

18

No. 09-19-00375-CV, 2022 Tex. App. LEXIS 244, at *27 (Tex. App.—Beaumont Jan. 13, 2022, pet. denied) (absent evidence of an element of a fraud cause of action, there can be no recovery). Instead, Akhtar argues Truss accepted money for the trusses in May 2017 and then delivered them in damaged condition in October 2018. This does not meet each of the elements of fraud, and the evidence cited by Akhtar was not conclusive with respect to the elements of fraud just as it was not conclusive with respect to Akhtar's breach-of-contract claim, as discussed above.

*Negligence*

The elements of a negligence cause of action are (1) legal duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *See Ace Real Prop.*, 2022 Tex. App. LEXIS 244, at *24. Citing *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987), Akhtar argues that there is "a general common law duty for everyone to exercise reasonable care to avoid foreseeable injury to others" and that Truss "owed a duty to get the product, protect the product keeping it safe and secure and to ensure delivery of the product to Appellants."

"[T]the existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). "In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the

19

actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id*. Of these, Akhtar's brief addresses only foreseeability and the likelihood of injury. The record includes evidence relevant to the other factors, including the magnitude of the burden and the consequences of placing the burden on the defendant. Poindexter testified Truss does not have an indoor storage facility large enough to store stacks of trusses as large as these, which were 58' x 10' x 10', because Truss typically delivers the trusses within two weeks after their fabrication. While Akhtar testified Lowe's routinely allows him to delay picking up his orders, his brief does not address the consequences of imposing a burden on small business owners to provide indoor facilities to store large products for customers who choose to wait months or years to accept delivery.

But assuming without deciding that the circumstances in this case created a duty on the part of Truss to exercise reasonable care, Akhtar did not conclusively establish that Truss breached any such duty, nor that any such breach proximately caused the damages in question. The evidence indicates, and both parties appear to agree, that the trusses deteriorated due to exposure to the elements during a sixteen-month delay between the trusses' fabrication and delivery. But the record contains conflicting evidence regarding who was responsible for the delay and what steps were taken to bring it to an end. Although Akhtar and Gomez both claim Truss was aware at the time of the order that the trusses were not to be fabricated until a later

20

time due to a problem with Citgo, Akhtar himself said it was in late May or early June 2017 that he called Jack, told him about the problem with Citgo, and asked him not to make the trusses. According to Poindexter, the trusses had already been built by that time, and in the months that followed, Truss repeatedly and systematically attempted to contact Akhtar to arrange for delivery. Although Akhtar testified that he contacted Truss thirty times to request delivery, he conceded that these efforts began in September or October 2018. The evidence shows the trusses were delivered in mid-October, at which time they were already unusable.

Assuming the existence of a duty, the trial court was tasked with the responsibility to find whether Truss exercised reasonable care and whether any breach of reasonable care proximately caused damages based on the trial court's own determinations regarding the credibility and weight of the evidence, findings we will not disturb on appeal in light of the conflicting evidence. We overrule Akhtar's second issue.

*Motion for New Trial - Newly Discovered Evidence*

In his final issue, Akhtar argues that the trial court should have granted his Verified Motion for New Trial, since the evidence he found after the trial showed that he requested delivery of the trusses in a September 18, 2018, text message.

We apply an abuse-of-discretion standard when reviewing a trial court's denial of a motion for new trial based on newly discovered evidence. *Waffle House,*

21

*Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Under this standard, we may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004); *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 368 (Tex. App.—Dallas 2005, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). We indulge every reasonable presumption in favor of the trial court's failure to grant a new trial. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809–10 (Tex. 1983)*, overruled in part on other grounds by Moritz v. Preiss*, 121 S.W.3d 715 (Tex. 2003). The Texas Supreme Court has explained the requirements for granting a motion for new trial based on newly discovered evidence:

> A party seeking a new trial on grounds of newly discovered evidence must demonstrate to the trial court that (1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to a lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted.

*Waffle House, Inc.*, 313 S.W.3d at 813. A party's allegations alone will not be enough to obtain a new trial on the basis of newly discovered evidence. Instead, the party must introduce admissible evidence at a hearing on the motion for new trial that establishes such essential facts as the party's lack of prior knowledge of the newly discovered evidence, the party's prior diligence toward discovering the evidence, and the nature of the newly discovered evidence. *Strong v. Strong*, 350

22

S.W.3d 759, 772 (Tex. App.—Dallas 2011, pet. denied). "In the absence of a hearing on the motion, nothing is preserved for appellate review." *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757 (Tex. App.—Amarillo 1995, writ denied).

Assuming without deciding that Akhtar's Verified Motion for New Trial was sufficient to preserve the issue for appellate review, the record does not establish the second and third requirements for a motion for new trial based on newly discovered evidence. *See Waffle House, Inc.*, 313 S.W.3d at 813. Akhtar's motion states that the text message was on Akhtar's phone and that although Akhtar "reviewed his phone to locate all evidence," he did not locate this message "until he did another diligent search after trial as he did not believe any such text messages existed." Although Akhtar's verification swore that the information in the motion was true and correct, no details were provided to the trial court regarding the type of "review" Akhtar conducted prior to trial, nor why he did not use the same search methods before trial that he used after trial. The trial court may have reasonably concluded that Akhtar failed to establish due diligence. In addition, the trial court may have reasonably concluded the text messages are cumulative of Akhtar's testimony that he began calling Truss in September or October 2018 to request delivery.

We conclude the trial court did not abuse its discretion, and we overrule Akhtar's third issue.

23

# CONCLUSION

Because we conclude the trial court did not reversibly err in rendering judgment for Truss and did not abuse its discretion in denying Akhtar's Verified Motion for New Trial, we affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on March 17, 2025
Opinion Delivered October 2, 2025

Before Golemon, C.J., Wright and Chambers, JJ.